Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 221665, United States v. Jose Luis Melendez-Rivera. Will counsel for the appellant please come up and introduce yourself on the record to begin. Good morning. May it please the court. I am Assistant Federal Public Defender Franco Perez and I represent the appellant Jose Luis Melendez-Rivera. May I please have two minutes of rebuttal time? You may. Thank you. This case presents two fundamental errors that require vacating Mr. Melendez's 198-month sentence and a remand for resentencing before a different judge. First, the government materially breached the plea agreement by delivering little more than technical compliance with the plea. Second, the district court committed procedural error by failing to consider substantial and unrebutted mitigating evidence that renders the 198-month sentence imposed insufficiently justified. I want to start with the issue of breach. When Mr. Melendez accepted responsibility for this offense, he did so in exchange for the government's promise to present a united front for a sentence of 180 months. Yet at the critical moment when the district court had already signaled skepticism about the agreed-to-arrange, the government stood silent, offering little more than technical compliance with the plea. That silence was not neutral. As this court's case law recognizes, plea agreements are contractual in nature, and thus they are subject to contract law. When you say silent, you mean what? I misspoke, Your Honor. So what I mean is the government essentially recited the agreed-to-recommendation, providing little else. And so what, on your view, we're on plain error for this challenge? Yes, and that's something I want to acknowledge. I think in our briefing, which predates Cortez-Lopez, we had made a similar argument, but we acknowledge that we're on plain error. And so what do you think it's clear had to be done beyond reciting the recommendation that was promised? So if I can just walk through the answer here. I think this was a very custom plea, and a custom plea should call for a custom explanation. We see, when we look at the record at the March 2022 status conference, we see a very skeptical court who seems to be particularly concerned with the injuries that the victim suffered in this case. I think there was a comment to the effect that one thing that's not moving along very well is the victim's face. So we know that the judge in this case was emotionally impacted and concerned for the victim's well-being. Secondly, we see a court in deferring acceptance of the Type C plea agreement, which was ultimately rejected, essentially saying, I am open to persuasion to why I should follow this plea that was for a sentence of 166 months. So then when we get to the sentencing hearing, and this is, I'm sorry for the long lead up, what we see is that the district court, we see defense counsel make all its arguments, and then the government doesn't really say much beyond stating the recommendation. One thing that I think is particularly important is at the hearing— But what did you want the government to say? I mean, we've said that the government can't say things that undermine the plea agreement, but we've also said that you don't have to give it flourish, or you don't have to enthusiastically say it. You just have to say it. Right, and I don't think that we are arguing that there was some kind of, that the prosecutor wasn't enthusiastic enough or that they had to support the sentence. Counsel, it seems to me that in the cases in which we have said that the prosecution has a, pursuant to the agreement, has a burden of explanation, can't just recite the agreement, there are cases where the plea agreement is an enormous variance between the agreement and the guidelines. So going in, it would be an expectation that the court would be skeptical because of that enormous variance. We don't have anything like that here. In fact, the agreement already involved a variance between the guideline and what had been agreed to. And so it seems that the facts here are at odds with the facts in the cases where we have said that the government simply can't say, yes, this is our recommendation. This case seems very different than those cases. I acknowledge, Your Honor, that the facts are not entirely similar to those of this case. I'm sorry. But what we do see is that the principle underlying those cases is that the duty of good faith and fair dealing, when some event happens, that in the case of Fortes-Lopez, there was this massive gap in the guideline range that wasn't contemplated by the parties. I think in Acevedo-Sorio, that was the case as well. What we see there is that it was, I'm not sure if unexpected, but it certainly wasn't contemplated in the plea. And here what we have is this intervening event where the court signals that it's disinclined to impose a 166-month sentence, a sentence that's about 8 percent shorter than the ones the parties ultimately recommended. And so when we get to the sentencing hearing, we have the prosecutor who did not – I believe it was a substitute prosecutor who did not sign this plea agreement, unable to tell the court anything about the case. And if there was a case where it was important to deliver that – What did you want the prosecutor to say? Well, I would never – I think that's up to the government. You have to think there was something. You have to have something in mind that wasn't said. Yes. It should have been said and that it was clear it should have been said, so what was it? If we look at counsel's allocution, counsel does mention the facts or the circumstances that animated this plea agreement. And one of those things that he says, I believe it's at the bottom of page 72 or 73 of the appendix, is this is a very custom plea. Everyone was consulted, the victims, or it was discussed with the victims, the upper levels of the U.S. Attorney's Office. Yet when it came time to explain why the court should follow the plea that was just a few months longer than the original one that the court had rejected, the government simply stood silent. All right. So the court knew that, though, that everybody had been consulted? It heard it from defense counsel, Your Honor, but I think there is a fundamental difference when the prosecution brings its own unique perspective and provides mitigation arguments. I think that they are perceived or received with more weight than if they had simply come from defense counsel. And the problem with not really explaining why this sentence was sufficient essentially is that then we have the court explaining, talking about the victims and the injuries suffered. And so it creates this. When you say you didn't explain it, was there a moment where the district court asked the prosecutor, can you explain your recommendation? No. No, Your Honor. So that moment never came. What's the moment of silence that's bothering you in response to what? In response to what had transpired earlier at that status conference a few months before. We know that the court was extremely concerned and that it was open to being persuaded. And so to not provide that missing piece. So the silence was not affirmatively speaking up? No, it was not explaining or providing a path to arrive at that sentence. In response to what? That's what I'm trying to figure out. At some point, they articulate the recommendation. Yes. And the silence is that when they articulate it, they didn't give an explanation for it. Is that the idea? It's part of the idea. Yes, Your Honor. And it's not so much an explanation. I think that what I'm trying to emphasize is that the principle of good faith and fair dealing doesn't allow the government to contract with a person. And if I may just finish my thought. And then come back later on and deliver or have their actions or remissions deprive the defendant of the benefit of the bargain. Thank you. Thank you. Thank you, counsel. Attorney for Appoli, please come up and introduce yourself on the record to begin. Good morning, Your Honors. May it please the court, Maria Luchter for the government. The court should affirm Mr. Melendez's sentence because first, the prosecutor fulfilled her obligations under the plea agreement, so there was no breach. And second, as to the sentencing, even assuming no waiver, the district court here issued a reasonable above guideline sentence after explaining which reasons and why warranted that sentence. Now, my brother counselor already conceded that the plainer applies here, so I will go ahead and move along to the breach claim itself. At the outset here, the prosecutor fulfilled her obligations. The plea agreement called for the prosecutor to recommend a 180-month sentence, and this is what the prosecutor did at the sentencing hearing. And no more was needed as per the terms of the plea agreement. And my brother counsel perhaps does not recognize the difference between what the government is obligated to do under the plea agreement versus what the government is permitted to do under the plea agreement. Here, the government was obligated to recommend a sentence, and the government did so. The government was not obligated to further explain that sentence. And this is further supported by this court's recent case law, where even after Lesser, this court recognizes that… I'm not understanding practically how the U.S. Attorney's Office is operating in this. So is it the general understanding in the office that we won't explain our recommendations, or is it a general understanding that you will? Your Honor, I believe it depends on context. In this context… I guess the reason I'm asking that is the idea that if you want an explanation for the recommendation, you have to separately bargain for that, so that what defendants should be doing now is just in their pleas saying, I'd like you to explain and recommend, then you'd be bound. But that your understanding is that when you agree that you're going to recommend it, that's understood as, and that's all we'll do and we won't explain it. Or is it, am I missing something? I guess I'm just not grasping. It seems like a somewhat strange way to operate, that you would be committing to the position that we won't explain our recommendation. I do not think it's a committing of that, and that certainly… I don't think all we're committing to is recommending it, but if, I mean, I suppose if asked, it can't be. Suppose the judge says, could you explain the recommendation? Would the U.S. Attorney's Office be, you know, I don't really have an explanation. Would that be consistent with the bargain? Certainly, if the court is asking for an explanation, then the government would provide an explanation. Well, suppose the government said, we don't have one, really. Would that be consistent with the bargain? Again, it comes down to what the plea agreement… The agreement says what this one says. And then in this circumstance, it depends, again, what the circumstances are. But these circumstances. In these circumstances, I would still… Could you explain your recommendation? Is the way the U.S. Attorney's operating here that you understand that you might just say, I don't really have one? And that would be consistent with the recommendation? And perhaps it may be a different question if this was before the court. I would still think it would not be a breach of the plea agreement if there was no explanation. But here, again, there was an upward joint, upwardly variant sentencing recommendation. And the government stated what it was obligated to do, that 180-month sentence was appropriate. I mean, here, if the government would have stood up, it would have needed to explain not only the mitigators, but also the aggravators, why this sentence was appropriate, the upwardly variant joint recommendation. Yeah, it's just parts of when these cases come to us and I hear the government saying, you know, there's no obligation to explain. It just… When that's said, I'm kind of concerned. What does that mean, really? I understand maybe you don't have an affirmative obligation to offer an explanation if no one's asking for it. You can just take it as assumed that the district court knew it, particularly on plain error. But if the government's position is the very formalistic idea that the word recommend is all we committed to, that that seems troubling to me whether the defendants quite understand what it is that they're bargaining with U.S. attorneys. Again, it comes down to the terms of the plea agreement. And this court has seen cases where the government has provided an explanation. For example, in Burgess-Paul Boynton, the government did provide an explanation on top of stating that it stood by the plea agreement. Counsel, it seems to me I've seen plea agreements where there is some agreement as to how the case will be argued at sentencing. For example, sometimes there's an agreement in which the government specifically indicates they will not argue for a particular enhancement that might be supported by the record. So there are instances where defense counsel anticipating what could be a problem at the sentencing in the way in which the case was argued will preclude arguments that might be problematic. By bargaining with the prosecution that something will not be argued. Is that correct? There are agreements like that? Are you aware of those? That's certainly an option for a defendant to bargain for that. I mean, we do engage in plea negotiations and we do change the terms based on the negotiation. Your position is following up on Judge Barron's question that if the defense counsel wants more than a statement of a formal agreement with recommendation that they should bargain for more, if that's what they want, is that the position that you're taking? They could certainly bargain for it, but ultimately the question here is whether what happened at the sentencing hearing was the breach of the plea agreement. And in this case, in line with this court's case law, what happened here was not the breach. What happened here, it was a joint upwardly variant sentencing recommendation. And this court has even recognized, like in Aponte Cologne, that there is a joint upwardly variant sentencing. But counsel, we have said in some of our cases that these are contractual agreements. The reasonable expectation of the parties is kind of a touchstone of the way in which the parties should execute the agreement. Why wouldn't it be a reasonable expectation for the defendant if, in the face of the evident skepticism of the judge, an explicit disavowal of the agreement, it's not enough? Why wouldn't it be a reasonable expectation of defense counsel that the government would offer some defense of the agreement that had been reached? Why isn't that a reasonable expectation? Again, I would bring this court back to the facts of this case. I mean, it really depends on the context. Here it was an upwardly variant sentencing recommendation. The government could have stood up and provided the aggravators as well, as long as it did not undermine the plea agreement or implicitly advocate it for a higher sentence. It still would not have been a breach of the plea agreement, considering that this was an upwardly variant joint sentencing recommendation. Didn't the district court say he wasn't impressed with the recommendation because it was too low? The initial type C plea agreement, I believe you referred to, that was a downwardly variant. No, no. In the actual sentencing proceeding, at what point does it become known that the district court judge thinks the recommended sentence is too low? Only when he pronounces the sentence? The recommended sentence of 180 months? Yes, when he pronounces the sentence. And there's no period prior to that where he's made clear that he thinks the recommendation is too low? No, no, he does not, Your Honor. Well, the court rejected a prior plea agreement with a lower sentencing recommendation, correct? That is correct. I was just differentiating between what the sentence in this case ended up being, which is 196 months. I'm sorry, after the 180-month recommendation. And so counsel is arguing that if we're looking at a totality of the circumstances in this case, we should not just look at what happened at the particular plea hearing where the prosecutor made the statement that this is what our recommendation is. If we're looking at totality, it's just not confined to that one hearing, that we should look to see the court's prior attitude towards the lower sentence and take that into consideration as to whether the prosecution, in good faith, said enough. Again, the plea agreement that was before the court at that time was the plea agreement at issue here, which was the 180-month sentencing recommendations and terms of that plea. And that was higher than the one that had been rejected? That is higher than the one that had been rejected, yes. So it was an upwardly variant sentencing recommendation, and then the judge, in considering all of the circumstances in this case, decided that an upwardly variant sentence even higher than what the parties had bargained for was appropriate in his mind based on his discretion. Thank you. I actually think that our case law is rather confusing in this area as to what the obligation of the prosecutor is. That's why we're trying to pin it down. So I guess from your perspective, once again going back to what my colleagues have said, if there's no negotiated agreement to say more, if you just say what the recommendation is, do you think that your obligation has been satisfied? This is what this court's case law lays out, that that's the obligation. Again, there's a difference between what the government is obligated to do versus what the government is permitted to do. And just going briefly into this court's case law, this court's case law, as recently as in Burgos-Poblena, recognized that there is no duty of advocacy or explanation on the part of the prosecutor. But I take your point that the context may matter as to whether implicitly or otherwise you can be understood to be breaching by backing away or undermining or some way casting doubt. Your contention here, at least, it's not clear that that happened. It's very clear on the record it did not happen in this case. Thank you. Thank you, counsel. Attorney for Appellant, please come up and reintroduce yourself on the record. You have a two-minute rebuttal. Counsel, can I ask you something at the very beginning? Yes, sir. You know, we have said in – we've commented critically in some of our breach cases that a wink and a nod to the court suggesting unhappiness by the prosecution with the agreement and sort of suggesting to the court that you should feel free to do something more. Do you see this – do you see the silence of the prosecution in the face of the evidence, skepticism of the judge about the agreements has been reached? Do you see that as the silence in the face of that, a kind of wink and a nod that we're okay if you disregard it? Is that sort of what you're arguing here? So our argument, Your Honor, and so if the negotiated agreement has no – doesn't provide that the court doesn't have – that the government doesn't have to provide an explanation, then I think under those circumstances we're getting closer to some of the cases the government decides. However, here we have this other hearing that really sheds light into the thinking of the district court and what it's interested in about the facts of the case. If I can just make three, four points. First, the government talks about technical compliance. However, the duty of good faith and fair dealing, it prohibits – or I'm sorry, it doesn't merely prohibit undermining actively a plea agreement. It also looks at the – whether there was meaningful performance of an obligation. Second of all, the government – that's a case where there was a split recommendation case where the government was entitled – or I'm sorry, it wasn't a split recommendation. The government was entitled to ask for an upward variance there. However, the government there supported its agreed to upward variance with explanation and context, while in our case the government remained silent. And I think that while both cases do involve upward variances, they do differ crucially in how the government performed its obligation. In Aponte, again, the government actively supported the agreed recommendation with explanation, and that's the critical distinction here. The court had already rejected a similar sentencing range in this case. When you say that, it had rejected a lower one. It was – yes, Your Honor, slightly lower. We're talking 166 months versus – Was there anything said at that prior proceeding that indicated the district court, though it clearly didn't like the lower range talked about then, would have been unhappy with the range this high? So the court in that case – No, no, just in this case. I'm sorry. During the status conference, no, the court didn't specifically say anything about not being comfortable with a downward variance. However, at the second hearing or under the plea, the operative plea agreement, one of the 924C count was dismissed. And so – and we have this moment at the sentencing hearing where the court says that our client pled guilty to 924C, which is just not the case. So it seems that there might be – the issue might be with the 924C charge, maybe dismissing it. And, again, because the government just didn't explain anything, we're left with this record. Can I just make one quick point about Burgos-Valbuena? In that case, it's totally different. I think that the prosecutor in Burgos-Valbuena did go beyond technical compliance. She endorsed the arguments of the defense counsel, so that's a completely different case. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes arguments in this case.